In the Supreme Court of Georgia

Decided:   September 22, 2014

S14A1187.  HARDMAN v. HARDMAN.

NAHMIAS, Justice.

William Jackson Hardman III (Father) appeals from the trial court's grant of summary judgment and award of attorney fees to Mary Ann Hardman (Mother), in an action he filed for declaratory judgment and contempt based on their divorce decree.  We reverse the grant of summary judgment, reverse in part and vacate in part the award of attorney fees, and remand for further proceedings.

1.     The parties were married in 1992 and divorced in Rabun County on March 25, 2013.  They have three children, including twin boys who are minors.  Under the parties' settlement agreement, which was incorporated into the final divorce decree, Father and Mother share joint legal custody of the minor children, while Mother has primary physical custody.  As joint legal custodians, the parties are to participate jointly in decisions regarding, among other issues, the children's education, including the choice of schools.  In the event of

disagreement, however, Father is given final decision-making authority as to education and health care issues, while Mother is the final decision-maker as to religion and extracurricular activity issues. The settlement agreement says that Father must pay Mother $7,000 per month, plus 30% of any annual gross income between $200,000 and $500,000, in "alimony" payments for 78 months or until she remarries or dies. The agreement also says that "[n]either party shall pay child support to the other at this time," but if Mother's "alimony" is terminated while the children are minors or in high school, Father's child support obligation will be $2,000 per month.[1] Although the 24-page settlement

---

[1] The record indicates that the parties agreed that Father would pay no child support and would instead pay a higher alimony amount to give him a tax advantage, as alimony is tax deductible but child support is not. If taken at face value, such an agreement appears contrary to Georgia law, because divorcing parents may not agree to waive child support to augment the amount of alimony to be received by the custodial parent. See Swanson v. Swanson, 276 Ga. 566, 567 (580 SE2d 526) (2003). We also note that the child support worksheet shows that Father should pay a presumptive child support amount of $2,127 per month, but this exact amount is then eliminated by a downward specific deviation for "alimony paid." See OCGA § 19-6-15 (i) (2) (G) ("Actual payments of alimony shall not be considered as a deduction from gross income but may be considered as a deviation from the presumptive amount of child support."). Even assuming that alimony paid between the same parties allows such a deviation, compare OCGA § 19-6-15 (f) (1) (A) (xxi) (alimony is included in the recipient's gross income only when "received from persons other than parties to the proceedings before the court"), the amount of the deviation here does not reflect the amount of alimony set forth in the settlement agreement, and the trial court did not make the written findings required to support such a deviation. See OCGA § 19-6-15 (i) (2) (G) ("If the court . . . considers the actual payment of alimony, the court shall make a written finding of such consideration . . . as a basis for deviation from the presumptive amount of child support."). See also OCGA § 19-6-15 (c) (2) (E), (i) (1) (B) (reiterating the requirement of written findings for deviations). Notwithstanding these concerns, at this point neither party has challenged the validity of the alimony and child support provisions of the divorce decree, and so we will proceed on the

2

agreement is quite detailed, it contains no specific provision regarding payment for the children's school expenses, and the child support worksheet attached to the divorce decree does not include any deviation for extraordinary educational expenses.

The parties' oldest child, who is now in college, attended Rabun Gap-Nacoochee School, a private school for grades 6 to 12. The two minor children began attending the same school starting in sixth grade in the 2010-2011 school year, and they have remained there for four school years. The combined tuition for both children is now about $2,605 per month. Before the divorce proceedings, the parties paid the private school tuition using joint marital funds, with Father generally writing the check. After the divorce, Mother refused to pay the tuition and threatened to move the children to a public school in North Carolina, where she lives, unless Father paid it.

Father made an advance tuition payment of $9,453.56 so the boys could enroll for the 2013-2014 school year; he then filed a complaint seeking reimbursement and a declaratory judgment as to whether Mother is required to

assumption that Mother either waived her entitlement to receive child support payments to help her pay the children's expenses or that, putting substance over form, such child support is a component of the "alimony" payments she receives.

pay the tuition out of her $7,000 monthly alimony payments and whether she can remove the children to school in another state. The complaint also sought an order enjoining Mother from removing the boys from the private school, asked that Mother be held in contempt, and requested attorney fees under OCGA § 13-6-11. In response, Mother filed a motion for summary judgment and a motion for attorney fees under OCGA §§ 9-15-14 and 19-6-2.[2]

On December 20, 2013, the trial court entered an order granting Mother's motion for summary judgment on the ground that Father's action was barred by the doctrine of res judicata. The court concluded that, if Father "intended for [Mother] to pay the private school costs out of the alimony he pays her each month, he should have written that intent in the Settlement Agreement" rather than trying to "relitigate the Settlement Agreement in order to supplement its terms." The court also rejected Father's argument that he needed clarification of the settlement agreement, noting that "[s]imply writing that [Father] has final authority on educational issues does not create an ambiguity as to payment of private school tuition." Finally, after finding that Father's complaint for

---

[2] We note that Father has not moved for summary judgment.

4

declaratory judgment and his action for contempt "lacked substantial justification," the court granted Mother's motion for attorney fees and ordered Father to pay $5,500 to Mother's counsel pursuant to OCGA § 9-15-14.

This Court granted Father's discretionary application to appeal.

2.     Father argues correctly that the trial court erred by applying the doctrine of res judicata strictly in the context of this divorce case. In response to Mother's defense of res judicata, the trial court held that this case was "controlled" by Lay Brothers, Inc. v. Tahamtan, 236 Ga. App. 435 (511 SE2d 262) (1999), a civil case involving the terms of a property lease. The Court of Appeals held there that res judicata barred the owner's request for a declaratory judgment that the lease required the tenant to pay the property taxes, because the parties had previously litigated about the lease and – under the usual rules of res judicata – a party is barred from re-litigating not only claims that *actually were* adjudicated previously, but also claims concerning the same subject matter that *could have been* adjudicated before between the same parties or their privies. See id. at 435-436. The silence of the lease on the issue of property tax payment was therefore dispositive, because the owner had the opportunity in the first proceeding to seek a ruling that the lease required the tenant to pay the taxes but

5

did not obtain such a judgment. See id. at 437. Likewise, the trial court here reasoned, the divorce proceeding resulted in a settlement agreement and final decree that do not expressly say which party pays for private school tuition, and thus Father cannot pursue a new action to "supplement" the agreement with a term requiring Mother to pay.

This Court has held, however, that the doctrine of res judicata – and in particular, the rule that bars re-litigation of matters that *could have been*, but were not actually, raised and decided in a previous action – should not be applied "mechanical[ly]" in divorce and alimony cases. See Brookins v. Brookins, 257 Ga. 205, 205-206 (357 SE2d 77) (1987). "'[T]he true rule of res judicata in divorce and alimony cases,'" we explained in Brookins, is that "'a final decree has the effect of binding the parties and their successors as to all matters which were *actually put in issue and decided,* or which *by necessary implication were decided* between the parties.'" Id. at 207 (emphasis changed; citation omitted). Or as the Court of Appeals later put the point, "the doctrine of res judicata is less strictly applied in divorce and alimony cases, including cases dealing with child support issues," and does not bar litigation of matters that merely could have been put at issue in the earlier proceeding. Dial v.

6

Adkins, 265 Ga. App. 650, 651 (595 SE2d 332) (2004).

Looking past the trial court's misperception of the applicable res judicata standard, however, the divorce decree in this case is properly read as requiring Wife to pay the minor children's private school tuition as long as Father decides that they should attend private school, as we explain in the next division. The issues as to which Father sought a declaration of his rights were adjudicated in his favor in the divorce proceeding, as reflected in the divorce decree, so he was entitled to the declaratory judgment he sought and Mother's res judicata defense should have been rejected under any version of that doctrine.

3.     Mother contends that the trial court's grant of summary judgment to her should be affirmed because the divorce decree and incorporated settlement agreement do not say that she must pay private school tuition and therefore Father must pay it. We disagree.

(a)     To begin with, one of the issues on which Father sought a declaratory judgment was whether the divorce decree allows Mother to move the boys from their private school to a public school in North Carolina, as she had threatened to do. The settlement agreement clearly and explicitly gives Father the final and binding authority to decide what school the minor children will

attend. It defines "matters affecting the children's . . . education" to include "choice of schools," and then specifies that if Father and Mother cannot agree on such matters, "[Father] shall have final decision-making authority as to education . . . issues" and his decisions on those issues "shall be binding."

Father has decided that the boys should continue to attend the Rabun Gap-Nacoochee School. In light of Mother's threat to move the children to a different school – that is, her assertion that she has the right to choose which school they attend and intends to exercise that right – Father was entitled to seek a declaratory judgment to ascertain his rights under the divorce decree and the parties' contract that it incorporates. See Weaver v. Jones, 260 Ga. 493, 493 (396 SE2d 890) (1990) ("'A declaratory judgment is an appropriate means of ascertaining one's rights and duties under a contract and decree of divorce.'" (citation omitted)). And given the plain language of the settlement agreement, the trial court plainly erred in granting Mother summary judgment on Father's request for a declaration that the divorce decree precludes Mother from unilaterally changing the children's school.

(b) As for which parent is responsible for paying the private school tuition, Mother and the trial court have overlooked a venerable principle

8

for interpreting contracts like the settlement agreement at issue here: "'The laws which exist at the time and place of the making of a contract, enter into and form a part of it'; and the parties must be presumed to have contracted with reference to such laws and their effect on the subject matter." McKie v. McKie, 213 Ga. 582, 583 (100 SE2d 580) (1957) (citations omitted) (applying this rule in interpreting an agreement for alimony). Accord, e.g., Magnetic Resonance Plus, Inc. v. Imaging Sys. Intl., 273 Ga. 525, 527 (543 SE2d 32) (2001); West End & Atlanta Street R. Co. v. Atlanta Street R. Co., 49 Ga. 151, 158 (1873).

Georgia's child support laws establish a presumption that the custodial parent will bear the expenses related to the children, assisted by child support paid by the non-custodial parent, with the amount of the child support obligation calculated principally in proportion to the adjusted gross income of each parent. See OCGA § 19-6-15 (b) (outlining the calculation of the child support obligation). This statutory scheme reflects "the state policy of affording to children of unmarried parents, to the extent possible, the same economic standard of living enjoyed by children living in intact families consisting of parents with similar financial means." OCGA § 19-6-15 (c) (1). Thus, before a divorce, the parents normally pay the costs of child-rearing from their

9

collective household income; when that household is divided, the parent in whose home the child primarily lives normally pays the child-rearing expenses, with the help of child support from the non-custodial parent that is calculated largely as a pro rata share of the parent's collective income.

The presumptive amount of child support calculated pursuant to the statutory child support guidelines is not conclusive. The parents may agree to vary from the presumptive support amount, as long as their agreement complies with the provisions of the guidelines, contains factual findings to support any deviations from the presumptive amount, and is determined by the court to provide adequate support to the children. See OCGA § 19-6-15 (c) (6). The trial court also has considerable discretion to deviate from the presumptive child support amount based on the many specific deviations listed in the guidelines or on other grounds, but only after supporting any deviation with written findings of fact. See OCGA § 19-6-15 (c) (2) (E), (i). Indeed, the guidelines enumerate a set of specific deviations for "extraordinary expenses," which allow the child support obligation to vary from the "average child rearing expenditures for families given the parents' combined adjusted income and number of children." OCGA § 19-6-15 (i) (2) (J). The guidelines also provide a specific

deviation to reflect "parenting time," if the child spends extended time with the noncustodial parent so that parent would bear more of the child's regular expenses. See OCGA § 19-6-15 (b) (8) (K), (g), (i) (2) (K). Any such deviations, however, must be identified and supported on Schedule E of the child support worksheet, which in turn must be attached to the trial court's final child support order or judgment. See OCGA § 19-6-15 (m) (1).

Under this legal framework, if the child support worksheet shows no deviation as to a particular child-rearing expense or type of expense, there is normally no ambiguity as to which parent must pay the expense. The presumption remains intact that the custodial parent will do so, with the aid of the child support he or she receives. We made this point in Georgia Department of Human Resources v. Sweat, 276 Ga. 627 (580 SE2d 206) (2003):

> [C]ustodial and non-custodial parents are not, by definition, similarly situated. The custodial parent often contributes to the costs of caring for children, and also takes primary responsibility for the day-to-day care of a child, maintains a separate household suitable for the children, and depends upon the Guidelines to ensure he or she receives adequate financial resources from the non-custodial parent to assist in raising the child. Non-custodial parents generally have measurably less involvement in the day-to-day care of children, and depend on the Guidelines to ensure that their financial support obligations are not out of proportion to their income level. Of course, the financial contributions of

11

non-custodial parents are significant and are often the result of hard work and sacrifice; nonetheless, it is generally true that "after divorce, the custodial parent's responsibility for the child's support as well as care is general and plenary, while the non-custodial parent's responsibility is usually limited to the requirements of the support order."

Id. at 630 (citation omitted).

This point is particularly clear as to the type of educational expenses at issue in this case. The statutory guidelines provide a specific deviation for "extraordinary educational expenses," which can be used to shift some or all of these expenses from the custodial parent to the non-custodial parent:

> Extraordinary educational expenses may be a basis for deviation from the presumptive amount of child support. *Extraordinary educational expenses include*, but are not limited to, *tuition*, room and board, lab fees, books, fees, and other reasonable and necessary expenses *associated with* special needs education or *private elementary and secondary schooling* that are appropriate to the parent's financial abilities and to the lifestyle of the child if the parents and the child were living together. . . . If a deviation is allowed for extraordinary educational expenses, a monthly average of the extraordinary educational expenses shall be based on evidence of prior or anticipated expenses and entered on the Child Support Schedule E--Deviations.

OCGA § 19-6-15 (i) (2) (J) (i) (emphasis added).

In this case, the parties' divorce decree, attached child support worksheet, and incorporated settlement agreement do not include such a deviation or

12

provide the findings that would be necessary to support it and thereby shift the responsibility for paying the children's educational expenses to Father. In light of the background law of child support, the minor children's educational expenses, like the other expenses of raising them, remained the responsibility of Mother as the custodial parent, who has either waived her right to receive child support from Father or receives child support as a component of her $7,000 monthly "alimony" payment. See footnote 1 above. The fact that the educational expenses are much higher than they would be if the children attended public school reflects Father's decision that they should remain at the Rabun Gap-Nacoochee School – but Mother expressly agreed that Father would have the authority to make that decision, and his decision could come as no surprise, since the parties' oldest child did his entire secondary schooling there and the twins began school there as soon as they could enroll, three years before the divorce. If there is a substantial change in the income or financial status of either party or in the children's educational needs, Mother's remedy would be to seek a modification of the child support order. See OCGA § 19-6-15 (k). Until then, however, she must abide by the divorce decree and the settlement agreement she entered.

13

Accordingly, the trial court also erred in granting summary judgment to Mother on the issue of whether the divorce decree requires her to pay the children's private school tuition. The court's conclusion that Father "should have specifically addressed [Mother]'s obligation to pay for private school if that is what he intended" has it backwards. It was Mother who needed to have the settlement agreement (as well as the child support worksheet) specify that Father would pay for private school, if she wanted to alter the legal presumption that the custodial parent would pay that child-rearing expense.

4.     The trial court awarded $5,500 in attorney fees to Mother pursuant to OCGA § 9-15-14, based on a finding that Father's complaint for declaratory judgment and action for contempt lacked substantial justification.[3]   Our discussion in Division 3 above shows that Father's declaratory judgment action did not lack substantial justification; the attorney fees award as to that part of Father's case is therefore reversed. See White v. Howard, __ Ga. __, __ (758

_____

[3]  OCGA § 9-15-14 (b) says:

The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action . . . if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification . . . .   As used in this Code section, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

14

SE2d 824, 828) (2014); Farris v. Farris, 285 Ga. 331, 333-334 (676 SE2d 212) (2009).

Father's contempt claim is a different matter. His motion asked the trial court to hold Mother in contempt based on her refusal to pay the children's private school tuition and her threat to move them to a public school, but the attorney fees portion of the court's order only addresses the threat to change schools. To that extent, the court properly held that Father's claim was made in "anticipation" of Mother's contempt, since she had not actually changed the children's school and thus had not even arguably violated the divorce decree in that respect. Father cited no law in the trial court, and has cited none here, allowing an "anticipatory contempt" claim. Concern that a counter-party may improperly be asserting rights under an agreement should be addressed, if at all, in an action for declaratory judgment rather than contempt.[4]

Thus, an award of attorney fees to Mother under OCGA § 9-15-14 might be appropriate if limited to fees she incurred solely in litigating the threatened-

---

[4] For the reasons discussed in Division 3 (b), Father's contempt claim based on Mother's actual (not merely threatened) refusal to pay tuition that was due did not lack substantial justification, so an award of attorney fees under OCGA § 9-15-14 based on this claim would be inappropriate. We express no opinion, however, about whether any violation of the divorce decree by Mother was willful.

15

school-change aspect of Father's contempt motion. However, the trial court did not allocate any specific portion of the $5,500 fee award to that aspect of the contempt claim, and the record shows that Mother did not provide evidence of attorney fees incurred solely in relation to that aspect of the contempt claim. Accordingly, to the extent the attorney fee award was based on the contempt action, it is vacated, and the case is remanded for the trial court to determine the amount of attorney fees, if any, that should be awarded to Mother based solely on the threatened-school-change aspect of that claim. We note that Mother also requested attorney fees based on the financial circumstances of the parties, see OCGA § 19-6-2, but the trial court did not address that request; it may do so on remand.

Judgment reversed in part and vacated in part, and case remanded with direction. Hines, P.J., Benham, Hunstein, Melton, Blackwell, JJ., and Judge Roger B. Lane, Sr. concur. Thompson, C.J., not participating.

16

S14A1187.  HARDMAN v. HARDMAN.

MELTON, Justice, concurring.

While I concur fully in the majority opinion, I write separately to highlight the fundamental errors committed by the trial court in applying the doctrine of res judicata to bar Father's proper declaratory action. As the majority points out, although the plain language of the divorce decree does not explicitly state that Mother was responsible for paying the minor children's private school tuition, the decree "is properly read as requiring Wife to pay the minor children's private school tuition as long as Father decides that they should attend private school." Maj. Op. at 6. Thus, contrary to the trial court's conclusions that the parties' agreement "does not address the particular issue" of private school payment and that Father cannot "relitigate the Settlement Agreement in order to supplement its terms," the divorce decree does in fact address the issue of private school payment and further resolves the issue in Father's favor. Accordingly, the fundamental errors committed by the trial court here began with respect to its interpretation of the divorce decree.

By failing to properly analyze the language of the decree, the trial court

in turn failed to fulfill its duty to provide the parties with clarity when faced with a proper declaratory action by Father. Indeed, because the parties could not agree who had to make such payments pursuant to the decree, Father was entitled to pursue a declaratory action to determine whether he or Mother was responsible for making the private school payments. See, e.g., Weaver v. Jones, 260 Ga. 493, 493 (396 SE2d 890) (1990) ("'A declaratory judgment is an appropriate means of ascertaining one's rights and duties under a contract and decree of divorce'"). However, instead of properly resolving the ambiguity with respect to the parties' rights under the divorce decree, the trial court invoked res judicata to conclude, erroneously, that the "unresolved" issue of private school tuition payments could not be resolved in Father's favor because the parties had failed to address it in the original decree. However, here, Father did not seek to "relitigate" the terms of the agreement or even litigate an issue that "should have been" resolved previously. He merely sought guidance with respect to the previous court order and the law regarding an issue in contention that arose after the divorce decree had been entered. Father was entitled to seek this guidance, and the trial court erred by failing to provide the proper guidance to Father through an appropriate interpretation of the language of the divorce decree.

2