**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 28, 2022**

# In the Court of Appeals of Georgia

A22A0199. NELSON v. MCKENZIE.

PIPKIN, Judge.

We granted this discretionary appeal to review the trial court's order modifying the child support obligation owed by Appellee Carey O'Neil McKenzie ("Father") to Appellant Nicholene Nelson ("Mother") for the benefit of their minor child. On appeal, Mother asserts that the trial court erred by failing to account for all of Father's income, by applying a downward deviation for visitation-related travel expenses, and by concluding that the child's private-school tuition could be classified as a nonspecific deviation. For the reasons set forth below, we reverse the judgment of the trial court in part, vacate it in part, and remand this matter for further proceedings.

1. Mother first argues that, while the trial court correctly calculated Father's base income and bonuses,[1] the trial court failed to consider income that Father receives as part of his employer's Long Term Incentive Plan ("LTIP").[2] Specifically, Father, who is a senior vice president at his company, testified at the hearing on the modification petition that, in 2018, 2019, and 2020, he received LTIP "equity grants" consisting of approximately $75,000 (CAD) worth of company stock; according to Father, the award is "what [his employer] give[s] to the folks at [his] level as an incentive to stick around." While Father testified that a "very complicated formula" determines how and when LTIP awards can be withdrawn,[3] he also testified that he withdrew his available LTIP in 2019 and 2020; Father's testimony coupled with Mother's exhibits reflect that the 2019 payment totaled approximately $26,000, and

[1] The trial court determined that Mother has a gross monthly income of $10,419.45, while Father has a gross monthly income of $27,724.24.

[2] While modification of child support is warranted pursuant to OCGA § 19-6-15 (k) (1) only where "there is a substantial change in either parent's income and financial status or the needs of the child," (citation and punctuation omitted) *Park-Poaps v. Poaps*, 351 Ga. App. 856, 864 (4) (833 SE2d 554) (2019), neither party disputes that modification is warranted here; since the entry of the original order resolving child support in May 2017, both parties' income has increased significantly.

[3] Father testified that LTIP is awarded at the discretion of "the Board," and he explained that some LTIP awards vest within three years, while other LTIP awards are not available until retirement.

the 2020 payment totaled approximately $129,000. At the hearing on the petition for modification, Father was adamant that the LTIP withdrawals were "not pay" and that he merely "cashed in assets to take care of expenses"; he also testified that, as of the time of the hearing, he had "depleted" all LTIP awards that were available for withdrawal. In its final order, the trial court credited Father's testimony that he currently has "no vested interest in LTIP" and, thus, that "no portion of the LTIP is actually available for child support purposes." Mother contests this conclusion on appeal.

"In Georgia, determining each parent's monthly gross income is the first step that a court must take in calculating child support under our child support guidelines." (Citation and punctuation omitted.) *Cousin v. Tubbs*, 353 Ga. App. 873, 880 (3) (a) (i) (840 SE2d 85) (2020). "Gross income . . . shall include *all income from any source*, before deductions for taxes[.]" (Emphasis supplied.) OCGA § 19-6-15 (f) (1) (A). Even inconsistent income must be considered by a factfinder. Specifically, OCGA § 19-6-15 (f) (1) (D) provides that

> [v]ariable income such as commissions, bonuses, overtime pay, military bonuses, and dividends shall be averaged by the court or the jury over a reasonable period of time consistent with the circumstances of the case and added to a parent's fixed salary or wages to determine gross income.

Adherence to these provisions is mandatory. *Evans v. Evans*, 285 Ga. 319, 319 (676 SE2d 180) (2009). The trial court's factual findings in this regard are reviewed under a clearly erroneous standard, while the trial court's legal conclusions are reviewed de novo. *Cousin*, 353 Ga. App. at 880 (3) (a).

While Father contends on appeal, as he did below, that his LTIP awards and withdrawals are not "pay,"[4] there is no indication that the trial court agreed with such an unconvincing argument; indeed, such a conclusion would have been clearly erroneous in light of the evidence that the two LTIP withdrawals appear as "earnings" on Father's pay stubs and as income on his W-2s.[5] Instead, the trial court seemingly excluded consideration of LTIP because there was no portion of LTIP available to withdraw *at the time of the hearing*.[6] While the trial court was undoubtedly trying to accurately assess the relative financial position of both parties, the requirement is to consider all income, even variable income, as part of calculating child support. See

[4] Father's argument on appeal is supported by a single citation of authority, namely an inapposite decision reciting the general standard that a trial court's findings of fact are entitled to deference on appeal.

[5] Father's 2019 gross wages totaled approximately $350,000, and his 2020 gross wages totaled approximately $430,000.

[6] While Father has depleted the available LTIP, he acknowledged that he had retained and "reinvested" at least forty percent of the 2020 LTIP withdrawal.

OCGA § 19-6-15 (f) (1) (D). Thus, even if the award of LTIP is discretionary and the withdrawal of those funds may be time and circumstance dependent, it is clear that LTIP is a periodic source – and, in fact, a very recent source – of income for Father. Accordingly, the trial court erred by failing to consider Father's LTIP when calculating his income for the purpose of modifying his child-support obligation, and the trial court's order is reversed to that extent.[7] See *Lutz v. Lutz*, 302 Ga. 500, 503-504 (3) (807 SE2d 336) (2017) (father's prior-year annual bonus, while not a guaranteed source of income, properly included when considering the child support obligation of the parents); *Evans*, 285 Ga. at 319 (erroneous for trial court to refuse to consider father's overtime simply because it was "not guaranteed").

2. Mother relocated to Illinois with the child shortly after the divorce, and Father, who remains in Georgia, exercises visitation with the child in Illinois. Following the modification hearing, the trial court granted Father's requested downward deviation of child support by $784.17 for visitation-related travel

_____

[7] We also reverse all portions of the trial court's order which relied on the erroneous calculation of Father's income; consequently, we pretermit Mother's other enumerations of error which are premised on the incorrect calculation of Father's income. We also vacate the trial court's ruling on the parties' request for attorney fees to allow the trial court an opportunity to reconsider the issue once Father's income is recalculated.

5

expenses, finding as follows: "Father travels at least twice a month to Illinois and, taking into consideration the circumstances of the respective parents as well as which parent moved and the reason for such move, the deviation is appropriate." However, as Mother correctly notes, while Father originally had twice-monthly visitation with the child – along with visitation associated with major holidays and summer vacation – Father's visitation scheduled was changed by a modified permanent parenting plan that was approved and filed by the trial court at the same time as the order modifying child support. Indeed, Father acknowledged during his testimony that he would "no longer have every other weekend visitation" but, instead, "would have a holiday visitation and a summer visitation parenting schedule."

Thus, while there is extensive evidence in the record concerning Father's travel expenses and while we understand that the trial court was attempting to offset Father's travel expenses, the trial court mistakenly failed to consider Father's travel expenses in the context of the modified parenting plan that alters Father's visitation schedule; accordingly, the trial court's downward deviation for visitation-related travel expenses is reversed, and, on remand, the trial court should evaluate any such deviation in light of the modified parenting plan. See *Park-Poaps*, 351 Ga. App. at

6

871 (7) (a) (reversing deviation for visitation-related travel expenses when the deviation was unsupported by adequate factual findings).

3. Although the parties share joint legal custody of the child, Mother has final decision-making authority concerning the child's education, and a key issue at the modification hearing was the cost of the child's private-school education. The trial court learned that, under the terms of the parents' original agreement, the cost of the child's day care was set at $2,000 per month, and Father's prorated share of that cost totaled $1,500 per month. The child apparently aged-out of her daycare facility in 2018, and Mother, in consultation with Father, moved the child to the British International School of Chicago ("BISC") for preschool and kindergarten, where she remains enrolled. The record reflects that the annual cost of the child's attendance at BISC has been between $25,000 and $35,000 per year, and Mother sought an upward deviation in child support to pay for the child's schooling. During his testimony, Father expressed his concerns with the expense of the school, characterized the tuition as "a significant burden," and explained that he believed that less-expensive alternatives were available.

In its order modifying Father's child-support obligation, the trial court explained that, while "Mother has final decision making authority for education . . .

7

her decision to keep the child in the same school where the child attended [preschool] is costly," and the trial court concluded that, as a nonspecific deviation, Father should continue to pay $1,500 per month towards the private-school tuition, which "only covers 51.76% of school." On appeal, Mother asserts that the trial court erred by treating the cost of the child's private-school education as a nonspecific deviation under OCGA § 19-6-15 (i) (3)[8] – which resulted in Father paying an arbitrary flat amount toward that tuition – rather than treating the cost as a specific deviation for extraordinary education expenses that is prorated pursuant to OCGA § 19-6-15 (i) (2) (J) (i).[9]

"The presumptive amount of child support calculated pursuant to the statutory child support guidelines is not conclusive." *Hardman v. Hardman*, 295 Ga. 732, 737 (3) (b) (763 SE2d 861) (2014). Indeed, the trial court "has considerable discretion to deviate from the presumptive child support amount based on the many specific

---

[8] "Deviations from the presumptive amount of child support may be appropriate for reasons in addition to those established under this subsection when the court or the jury finds it is in the best interest of the child."

[9] "Extraordinary educational expenses may be a basis for deviation from the presumptive amount of child support . . . . [and] include, but are not limited to, tuition . . . and other reasonable and necessary expenses associated with . . . private elementary . . . schooling that are appropriate to the parent's financial abilities and to the lifestyle of the child if the parents and the child were living together."

deviations listed in the guidelines or on other grounds, but only after supporting any deviation with written findings of fact." Id. At issue here is whether the trial court was permitted to treat the cost of the child's private school as a nonspecific deviation when the child-support guidelines expressly categorize extraordinary educational expenses as a specific deviation.

While our Supreme Court in *Parker v. Parker*, 293 Ga. 300, 306 (2) (745 SE2d 605) (2013), has indicated that there is no "hard-and-fast rule" against such a practice, that case involved a trial court exercising its discretion to craft an equitable balance between parents in a split-parenting arrangement; indeed, the case involved a nonspecific deviation afforded to both parents.[10] Id. Here, on the other hand, the order offers no insight into the trial court's decision to use a nonspecific deviation over the specific deviation. Indeed, we agree with Mother that the trial court's use of a nonspecific deviation to permit Father to continue to pay the same *dollar* amount that he paid towards *daycare* – without any analysis or explanation other than a passing notation that the child's private school is "costly" – is arbitrary, especially in light of the fact that the parties did not present evidence specifically addressing the cost of

---

[10] The court in *Parker* also noted that "the better practice [is] not to include within nonspecific deviations factors that are set forth in the statutory list of specific deviations." Id. at 306 (2).

private schooling in Chicago.[11] Further, while the trial court's order appears to mirror Father's ongoing concern with Mother's choice of school, Father actually agreed to an amended parenting plan shortly before the start of the modification hearing in which Mother retained final decision-making authority over the child's schooling.

We recognize that modifying child support generally requires the trial court to strike a delicate balance, which is no easy task, and we do not mean to say that the trial court must require Father to pay for Mother's choice of school, no matter the cost. Indeed, the plain language of the specific deviation for extraordinary educational expenses reflects that such deviations must be "appropriate *to the parent's financial abilities* and to the lifestyle of the child if the parents and the child were living together." (Emphasis supplied.) OCGA § 19-6-15 (i) (2) (J) (i). Nevertheless, under the facts of this case, the trial court committed reversible error by using the nonspecific deviation to arbitrarily set Father's contribution toward the child's private-school costs.

*Judgment reversed in part and vacated in part, and case remanded. Rickman, C. J., and Miller, P. J., concur.*

___

[11] While Father testified vaguely that he knew of "top" private schools in Chicago that "are almost half the cost of what we pay for BISC," he later acknowledged that he had no evidence regarding those schools or the relevant tuition.