**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**June 25, 2026**

# In the Court of Appeals of Georgia

A26A0727. SAGICOR ENTERPRISES, LLC v. COLEMAN.

HODGES, Judge.

While married to each other, appellee Michael B. Coleman and Nadine M. Coleman, who is not a party to this appeal, jointly owned a business. That business is appellant Sagicor Enterprises, LLC. When the Colemans divorced in 2020, the divorce decree recognized their differing individual ownership shares and awarded the entire business to Nadine, the 51 percent majority owner. The trial court ordered Nadine to pay Michael for his 49 percent share of the business, but reduced the amount she paid him for his share based upon his actions "which the [c]ourt deem[ed] directly damaged the operations of the business[.]"

In 2024, Sagicor sued Michael claiming, inter alia, breach of contract, breach of fiduciary duty, conversion, fraud, and tortious interference with business relations. The trial court granted Michael's motion for summary judgment on the ground that the doctrines of res judicata and collateral estoppel barred Sagicor from litigating those claims because the issue of Michael's damage to the business had been adjudicated in the divorce.

Sagicor appealed, arguing that summary judgment should not have been granted because the trial court erred in finding that Nadine was a Sagicor privy and that the company operated as her alter ego. Sagicor also asserted that the trial court erred in applying the doctrines of res judicata and collateral estoppel. For the reasons that follow, we affirm the grant of summary judgment to Michael, but reverse the trial court's determination that Nadine acted as Sagicor's alter ego.

A trial court may grant summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56(c). We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

*Amason v. Highland Park Homeowners' Ass'n*, 362 Ga. App. 163, 164(1) (866 SE2d 836) (2021) (citation and punctuation omitted).

1. Sagicor asserts that the trial court erred in finding that it was in privity with Nadine, that it operated as her alter ego, and that its corporate veil should be pierced. We disagree.

(a) *Privity*. Because res judicata and collateral estoppel are affirmative defenses, Michael bore the burden of proving that they apply. *Glen Oak, Inc. v. Henderson*, 258 Ga. 455, 458(2) (369 SE2d 736) (1988). To successfully assert either defense, there must be identity of the parties or their privies. *McIver v. Jones*, 209 Ga. App. 670, 672(a) (434 SE2d 504) (1993). There is no dispute that Sagicor was not a party to the divorce and that Nadine is not a party to the instant appeal. The only issue is whether Nadine and Sagicor are in privity. Sagicor argues that because it was not a party to the divorce action and could not be heard in that action, it cannot be in privity with Nadine. It is well settled, however, that one need not be a party to a prior action in order to be in privity with a party. *Miller v. Steelmaster Material Handling Corp.*, 223 Ga. App. 532, 535(3) (478 SE2d 601) (1996).

Neither party cites any legal authority on the issue of whether the owner of a limited liability company can be in privity with that company. Indeed, Sagicor boldly states, with no citation to legal authority, that "[p]rivity does not exist between a business and an officer." This is incorrect. Nadine was the majority owner of Sagicor prior to the divorce and, following the divorce, became the sole member of Sagicor. Contrary to Sagicor's assertion, this Court has found a sole owner may be in privity with that person's limited liability corporation. *Ga. Power Co. v. Brandreth Farms, LLC*, 364 Ga. App. 816, 822-23(1)(b) (875 SE2d 444) (2022) (finding that the sole proprietor of a farm was in privity with the farm); see *McCumber v. Petroleum Svcs. Group, LLC*, 333 Ga. App. 459, 461-62(1) (773 SE2d 802) (2015) (finding business owners, who brought claim previously asserted by their corporation, were in privity with corporation because they were "so connected in law and [had] such an identity of interest") (physical precedent only); see also *Dalton Paving & Constr., Inc. v. South Green Constr. of Ga.*, 284 Ga. App. 506, 507-08 (643 SE2d 754) (2007) (holding that developer, owners, and property manager were "in essence third party beneficiaries of the subcontract" between plaintiff general contractor and defendant subcontractor, who previously arbitrated claim over contract). Further, as sole owner, Nadine's

"interest in raising and pursuing a claim that [Michael] had improperly removed ... corporate assets[, incurred debts, or otherwise damaged the business] was identical to [Sagicor's] interest, and for purposes of res judicata and collateral estoppel [s]he and [Sagicor] are privies." *Miller*, 223 Ga. App. at 535(3) (finding, where a company that was a "major marital asset" owned equally by husband and wife prior to divorce became wholly owned by husband post-divorce, that company and husband were privies because their interests in pursuing wife's improper removal of corporate assets were identical).[1] We find no error in the trial court's determination that Sagicor is in privity with Nadine.

(b) *Alter ego*. Sagicor also argues that the trial court erred in finding that it has operated as Nadine's alter ego, and in determining that its corporate veil could thus be pierced. Michael counters with, among other things, the argument that Nadine

---

[1] We are not persuaded by Sagicor's citation to *Blakewood v. Yellow Cab Co.*, 61 Ga. App. 149 (6 SE2d 126) (1939), apparently for the proposition that privity cannot exist between the party to an initial suit and a nonparty to that initial action who later files a separate suit. In *Blakewood*, a wife hit by a taxi filed a personal injury suit to which her husband was not a party. Id. She lost. Id. at 150. The husband later filed his own suit against the cab company, seeking to recover for his wife's injuries, medical costs, and lost earnings. Id. In the initial suit, however, the wife had specifically claimed that she was emancipated from the husband. Id. This Court found no privity, given that none of the wife's rights had been transmitted to the husband. Id. at 151. *Blakewood* is not analogous to the instant appeal.

5

terminated his employment on her own rather than through the corporation, and used shareholder loans to pay personal expenses. Finding error, we reverse.

"The concept of piercing the corporate veil is applied in Georgia to remedy injustices where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." *Baillie Lumber Co. v. Thompson*, 279 Ga. 288-90(1) (612 SE2d 296) (2005). Pertinently, piercing the corporate veil is a "claim." Id. at 290(1). It is not a defense, which is how Michael is attempting to use it. See generally *Lumpkin v. Envirodyne Indus., Inc.*, 933 F2d 449, 460(II)(B)(2) (7th Cir. 1991) ("[T]he alter ego doctrine ... does not work this way. Courts will allow plaintiffs to pierce the corporate veil to impose liability on a defendant who unjustly seeks protection in the corporate form. The alter ego doctrine is a sword, not a shield, *the basis for a cause of action, not a defense*.") (emphasis omitted and added).[2]

Further, to the extent that Michael attempted to raise this as a claim below, he did so for the first time in his motion for summary judgment; he did not amend his

---

[2] See *Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557, 558(1) (458 SE2d 95) (1995) (recognizing that "the decisions of the federal courts of appeal are not binding on this court, but their reasoning is persuasive").

answer to add a counterclaim. This "completely new claim made for the first time in a motion for summary judgment does not satisfy even the liberal requirements of the Georgia Civil Practice Act for notice pleading[.]" *Lima Delta Co. v. Global Aerospace, Inc.*, 338 Ga. App. 40, 45(2) (789 SE2d 230) (2016) (citation omitted). The trial court erred in granting summary judgment on this point.

2. Next, Sagicor argues that the trial court erred in granting Michael's motion for summary judgment by finding that res judicata or collateral estoppel barred the company's action. Sagicor asserts that Michael met none of the factors necessary for the application of either doctrine.

Our Supreme Court has discussed res judicata as follows:

A judgment is conclusive as to all matters put in issue, or which, under the rules of law, might have been put in issue, in a former suit between the same parties concerning *the same subject matter* in a court of competent jurisdiction. Thus, one must assert all claims for relief concerning *the same subject matter* in one lawsuit and any claims for relief concerning that same subject matter which are not raised will be res judicata pursuant to OCGA § 9-12-40.

*Fowler v. Vineyard*, 261 Ga. 454, 458(3)(b) (405 SE2d 678) (1991) (citation omitted).

In deciding whether OCGA § 9-12-40 operates to bar a claim, we must consider: (a) whether there is a valid antecedent judgment; (b) whether there is identity of parties; (c) whether there is identity of issues; and (d) whether reasons of public policy militate against a strict application of the above statute in this case.

*Miller*, 223 Ga. App. at 535(3) (citation and punctuation omitted).

The doctrine of collateral estoppel, also known as estoppel by judgment, is similar, but not identical. Generally, res judicata bars relitigation of any matter of a cause of action that was, or could have been, put in issue and adjudicated in a prior proceeding between the same parties, while estoppel by judgment prevents relitigation in a subsequent suit (involving a different cause of action) a matter which was actually adjudicated in a former case.

Id. (citation and punctuation omitted). We turn now to the factors at issue.

(a) *Valid antecedent judgment.* Sagicor argues that, as an initial matter, there was no valid antecedent judgment. In this regard, Sagicor contends only that "although there is a prior judgment, it is not applicable to this case as it does not bind the parties in this matter on any of the causes of action asserted here. Thus, there is no ***valid*** antecedent judgment." The company presents no other argument and cites to no legal authority regarding why it alleges that the divorce judgment is invalid.

8

However, the judgment in the divorce case is final, and it has neither been reversed nor set aside. See *Reid v. Reid*, 201 Ga. App. 530, 532(3) (411 SE2d 754) (1991) (finding that with both res judicata and collateral estoppel, "[i]t is the general rule that a judgment sought to be used as a basis for the application of the doctrine of res judicata must be a final judgment") (citation and punctuation omitted). Further, there is no indication, nor does Sagicor contend, that the prior judgment was not rendered by a court of competent jurisdiction. See *Fierer v. Ashe*, 147 Ga. App. 446, 447(II) (249 SE2d 270) (1978) ("A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside.") (citation omitted). Sagicor has failed to show that the judgment entered in the divorce is invalid.

(b) *Identity of parties*. As discussed in Division 1(a), there is an identity of parties between Nadine and Sagicor.

(c) *Identity of issues*. Sagicor argues that there was no identity of issues or subject matter because the divorce dealt with child custody and support, alimony, debt

division, and property division, while the present action asserts breaches of contract and fiduciary duty, theft by taking and conversion, tortious interference with business relations, fraud, and punitive damages. Michael counters that the issue of property division—present in the divorce—is based upon the same set of facts that underlies the claims in Sagicor's complaint in the instant case. Both actions alleged that Michael damaged the business by, among other things, incurring debts and wrongfully keeping equipment.

"The question in determining whether an issue has already been decided by another court is whether both claims arose from the same set of facts. To determine that question, we must 'examine the subject-matter and the issues as raised by the pleadings in the two cases.'" *QoS Networks, Ltd. v. Warburg, Pincus & Co.*, 294 Ga. App. 528, 532(1)(b) (669 SE2d 536) (2008), citing *Gamble v. Gamble*, 204 Ga. 82, 87(1) (48 SE2d 540) (1948). "Matters are put in issue by the pleadings in the previous litigation." *Brookins v. Brookins*, 257 Ga. 205, 205-06(1) (357 SE2d 77) (1987) (citation and punctuation omitted).

We do not have the pleadings in Michael and Nadine's divorce action, but the trial court in the divorce decree reduced the amount Nadine had to pay Michael for

his share of the business by the amount that Michael's "actions ... directly damaged the operations of the business[.]" The trial court then listed three factors it used to reduce Michael's award: (1) the amount of an "attorney's lien on the Lawrenceville property caused solely by" Michael, of $13,623.00; (2) Michael's "creat[ion] of various debts for the business, which became due shortly after he was terminated from the business[,]" totaling $10,000.00; and (3) Michael's "actions of maintaining exclusive control over some essential equipment for [Sagicor] to operate its business and complete jobs[,]" which caused Sagicor to "los[e] valuable revenue after October 2018" of $50,000. Thus, Michael's share of the business was reduced by a total of $73,623.00.

Even in the absence of the pleadings in the divorce action, it is clear that the subject matter and issues raised and decided by the trial court when it divided Sagicor between the parties as marital property turned on how Michael's damage to the business in the creation of unspecified debts and his withholding of company property had either devalued or cost the business money. This, similarly, is the crux of Sagicor's complaint underlying the instant appeal. The complaint accuses Michael of, among other things, incurring debts and failing to return property owned by Sagicor.

11

It is true that in the instant complaint, Sagicor alleges damages not referenced in the divorce judgment: that Michael took money owed to the business from referrals, turned away business and referrals, and damaged the business in other ways. But Sagicor presents no argument regarding why the claims that make up the subject matter of the instant complaint could not have been raised in the division of property portion of the divorce action as, essentially, a set-off against the value of Michael's share of the business—which was not totally set off by the award in the divorce action.

The issue before us, however, is whether the claims that make up the subject matter of the instant complaint were raised and decided, or could have been raised in the division of property portion of the divorce action. Without the divorce petition, we cannot know what division of property claims were raised. We know only the claims the trial court granted and not those which it may have denied sub silentio or by necessary implication. As our Supreme Court has explained, "[t]he true rule of res judicata in divorce and alimony cases ... is that a final decree has the effect of binding the parties and their successors as to all matters which were *actually put in issue and decided*, or which *by necessary implication were decided* between the parties." *Hardman*

*v. Hardman*, 295 Ga. 732, 735(2) (763 SE2d 861) (2014), quoting *Brookins*, 257 Ga. at 207(2).

Because the record is silent in this regard, we must find that the trial court's res judicata determination is correct. "As we have repeatedly emphasized, the burden is on the party alleging error to show it by the record and where the proof necessary for determination of the issues on appeal is omitted from the record, an appellate court must assume that the judgment below was correct and affirm." *HA & W Fin. Advisors, LLC v. Johnson*, 336 Ga. App. 647, 654(2) (782 SE2d 855) (2016) (citation and punctuation omitted). Sagicor makes no argument that the subject matter of these claims could not have been raised in the divorce action's division of property dispute; it argues only that the issues are different, which they are not. As these claims accrued before the parties' divorce, even if these claims were not put in issue, "under the rules of law they might have been put in issue[.]" OCGA § 9-12-40.

(d) *Public policy militating against a strict application of the statute.* Sagicor additionally points to the public policy mandates against strict application of the doctrine of res judicata in divorce and alimony cases. See *Hardman*, 295 Ga. at 735(2) (finding that res judicata "should not be applied mechanically" in divorce and

alimony cases) (citation and punctuation omitted). Accord *Brookins*, 257 Ga. at 207-08(2) (recognizing that, as a matter of public policy, the doctrine of res judicata is less strictly applied in divorce and alimony cases). While this is true, as noted above, our Supreme Court has made an important distinction regarding the application of res judicata in divorce cases: namely, that the doctrine applies to matters "actually put in issue and decided, or which by necessary implication, were decided[.]" *Hardman*, 295 Ga. at 735(2) (citation, punctuation, and emphasis omitted); *Brookins*, at 257 Ga. at 207(2).

Because the divorce petition is not in the record, again, we cannot know what claims were raised in the first action and thus were "by necessary implication" decided. We therefore must presume that the trial court's order was correct in its res judicata decision.[3] *HA & W Fin. Advisors, LLC*, 336 Ga. App. at 654(2). The trial court did not err.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Markle, J., concur.*

---

[3] Because we have determined that the trial court's application of res judicata correct, we need not address the issue of collateral estoppel.